UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IAP DESIGN-BUILD, LLC, <br><br> Plaintiff, <br><br> v. <br><br> WINDAMIR DEVELOPMENT, INC., <br><br> Defendant. | CIVIL ACTION NO. <br> 1:21-CV-01871-JPB |

### ORDER

This matter is before the Court on IAP Design Build, LLC's ("Plaintiff") Petition to Confirm Arbitration Award [Doc. 1] and Windamir Development, Inc.'s ("Defendant") Motion to Vacate Arbitration Award [Doc. 8]. This Court finds as follows:

### BACKGROUND

This case involves a dispute between a contractor and a subcontractor. On September 24, 2015, the United States Army Corps of Engineers awarded a contract ("the Prime Contract") to Plaintiff in the amount of $12,217,620 for modifications and additions to a building on Fort Gordon, Georgia. Thereafter, on April 12, 2016, Plaintiff entered into a contract ("the Subcontractor Agreement") with Defendant whereby Defendant agreed to perform a large majority of the work

required by the Prime Contract in exchange for $11,637,255. The Subcontractor Agreement provided that the parties would equally split the expected profit. As to change orders, section 1.8 of the Subcontractor Agreement provided that "[s]ubcontractor shall receive all compensation due to [c]ontractor from [o]wner for the additional work performed by [s]ubcontractor, except that [s]ubcontractor shall only receive 50% of any '[p]rofit' line item in the schedule of values for any price agreed by [o]wner for such Change Order." [Doc. 8-1, p. 4].

The Prime Contract was modified on several occasions to include additional asbestos abatement, brick removal, SCIF changes and installation of a new brick exterior. In all, there were four substantive modifications to the Prime Contract, and these changes increased the total cost of the Prime Contract to $20,659,821.23.

As a result of the changes to the Prime Contract, Plaintiff and Defendant negotiated and executed six Change Order Amendments. A dispute arose between the parties over whether the profit associated with the Change Order Amendments should be split between the parties. Plaintiff asserted that section 1.8 of the Subcontractor Agreement governed. Defendant, on the other hand, argued that it was entitled to all compensation for work it performed pursuant to the Change Order Amendments because the Change Order Amendments increased the Subcontract by specific and express amounts, stated nothing about profit sharing

and contained language that "[i]f any of the provisions of this Change Order conflict with any portion of the Subcontract, the provisions of this Change Order shall govern unless the conflicting portion of this change order produce an illegal or absurd result." [Doc. 8, p. 8]. In other words, Defendant argued that because the Change Order Amendments contained payments of a certain amount, Defendant should be entitled to keep the entirety of those payments.

Per the Subcontractor Agreement, the dispute was submitted to arbitration. After a four-day hearing, the arbitrator determined that any profit associated with the Change Order Amendments should be split in the same manner that they were split in the Subcontractor Agreement. In construing the Subcontractor Agreement and the Change Order Amendments together, the arbitrator explained that "[i]f the parties intended something other than the division of profit[,] which seems clearly stated in Subcontract section 1.8," that agreement should have been incorporated specifically into the Change Order Amendments. [Doc. 8-1, p. 5]. Ultimately, the arbitrator awarded Plaintiff $915,077.54, plus pre-judgment simple interest at the rate of 7% per annum from and after March 12, 2021. Id. at 9.

On May 5, 2021, Plaintiff filed its Petition to Confirm Arbitration Award. [Doc. 1]. On May 26, 2021, Defendant filed its Motion to Vacate Arbitration Award. [Doc. 8]. Both the Petition and the Motion to Vacate are ripe for review.

## LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), a presumption exists that arbitration awards will be confirmed. Johnson v. Directory Assistants Inc., 797 F.3d 1294, 1299 (11th Cir. 2015). As a result, "federal courts should defer to an arbitrator's decision whenever possible." Id. (quoting Frazier v. CitiFinancial Corp., 604 F.3d 1313, 1321 (11th Cir. 2010)). The FAA limits a court's authority to vacate or modify an arbitration award to four narrow circumstances:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). In the analysis that follows, the Court will decide whether the arbitration award should be confirmed or whether this is a very unusual circumstance where vacatur is required. Gherardi v. Citigroup Glob. Mkts. Inc.,

4

975 F.3d 1232, 1236 (11th Cir. 2020) (recognizing that "[v]acatur is allowed 'only in very unusual circumstances'").

## ANALYSIS

In this case, Defendant argues that the award should be vacated under § 10(a)(4) because the arbitrator exceeded his powers by ignoring the plain language of the Change Order Amendments.  The Eleventh Circuit Court of Appeals has "interpreted § 10(a)(4)'s language narrowly—very narrowly." Id. at 1237.  Indeed, "[j]udicial review of arbitration decisions is 'among the narrowest known to the law.'" Id. (quoting Bamberger Rosenheim, Ltd. v. OA Dev., Inc., 862 F.3d 1284, 1286 (11th Cir. 2017)).  Significantly, "[o]btaining vacatur of an arbitration award under § 10(a)(4) is a 'high hurdle' because '[i]t is not enough . . . to show that the [arbitrators] committed an error—or even a serious error.'" S. Mills, Inc. v. Nunes, 586 F. App'x 702, 704 (11th Cir. 2014) (quoting Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 671 (2010)).  Instead, to obtain vacatur, a party must show that the arbitrator "stray[ed] from the interpretation and application of the agreement and effectively dispens[ed] his own brand of industrial justice." Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001).  In analyzing whether vacatur is appropriate, the only question before a reviewing court is "'whether the arbitrator (even arguably) interpreted the parties'

5

contract, not whether he got its meaning right or wrong.'" Johnson, 797 F.3d at 1302 (quoting Oxford Health Plans LLC v. Sutter, 569 U.S. 564, 569 (2013)).

Contrary to Defendant's argument that the arbitrator exceeded his authority, this Court finds that the arbitrator did not fail to consider the Change Order Amendments or the plain language of the Change Order Amendments. It is clear to this Court that the arbitrator interpreted the parties' contract. It is not for the Court to decide whether the arbitrator was right or wrong. Review of the arbitrator's decision shows that the arbitrator was construing both the Subcontractor Agreement and the Change Order Amendments when he found that the parties agreed to split their profits equally. Because the arbitrator's ruling was derived from the contract between the parties, the arbitrator's actions did not exceed the scope of his power. This is simply not a case where the arbitrator flagrantly defied the terms of the contract and dispensed his own brand of industrial justice. Ultimately, Defendant "has failed to surmount the high hurdle necessary to obtain vacatur of the arbitration award under § 10(a)(4)," and therefore this Court defers to the arbitrator's decision.

## CONCLUSION

For the reasons stated above, the Petition to Confirm Arbitration Award [Doc. 1] is **GRANTED**, and Defendant's Motion to Vacate Arbitration Award

[Doc. 8] is **DENIED**.[1]  **IT IS HEREBY ORDERED** that the arbitration award is confirmed.  The Clerk is **DIRECTED** to close this case.

**SO ORDERED** this 25th day of February, 2022.

J. P. BOULEE
United States District Judge

---

[1] In its response to Defendant's Motion to Vacate, Plaintiff requested attorney's fees and sanctions. [Doc. 11, pp. 16-17]. Specifically, Plaintiff argued that the Motion to Vacate was frivolous. Plaintiff's request, however, was not made via a separate motion and the request was not supported by a memorandum of law which cites supporting authority as required by the Local Rules. As such, Plaintiff's request for fees is **DENIED** as procedurally improper.